# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LABTEST INTERNATIONAL, INC., D/B/A INTERTEK CONSUMER GOODS NORTH AMERICA, a Delaware corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.: 10-CV-02897 ) |
| CENTRE TESTING INTERNATIONAL CORP., a Chinese corporation, | ) Judge Robert M. Dow, Jr. ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Centre Testing International Corp.'s motion to dismiss Plaintiff Labtest International Inc's complaint for lack of personal jurisdiction [8] pursuant to Federal Rule of Civil Procedure 12(b)(2) and Defendant's motion for costs [11]. Having reviewed the briefs and pertinent exhibits, the Court grants the motion [8] and dismisses this case for lack of personal jurisdiction. The Court denies Defendant's motion for costs [11].

**I.   Background**

Defendant Labtest International, Inc., d/b/a Intertek Consumer Goods North America (hereinafter "Intertek"), is an international company dealing in the certification of systems as well as testing, inspection, and certification of products and commodities. In connection with its certification and testing services, Intertek has created and authored a number of works regarding product safety training and testing analysis. Such works include: (1) A Design Hazard Analysis Testing Form; (2) A Product Safety Training—Overview Guide; and (3) A Product Safety Training—Human Factors Guide (collectively, the "Intertek Materials"). The Intertek Materials were designed and authored—and are now maintained—at Intertek's testing facility in Arlington

Heights, Illinois. Intertek's primary administrative office in Illinois is located in Oak Brook (where a small testing facility also is located), but Intertek's primary testing facility is in Arlington Heights. According to the complaint, Intertek is the sole owner of all rights, including the copyrights, in the Intertek Materials.

Defendant Centre Testing International Corp.'s ("CTI") is a Chinese corporation that is organized and operating under the laws of the People's Republic of China and has a principal place of business in Shenzhen, Guangdong Province, China. CTI, like Intertek, provides testing, inspection, audit, and certification services to the consumer products industry. CTI does not produce any commercial products. CTI maintains facilities in China, and does not have any facilities in the United States. According to CTI, it does not own or rent any property in the United States. CTI also maintains that it does not employ any workers in the United States; however, in October 2009, CTI retained Herbert Hewitt for the purposes of soliciting business in the United States and Canada. Under the terms of the consulting agreement between Hewitt and CTI, Hewitt's duties generally include introducing prospective clients to CTI, maintaining CTI's image in North America, and forwarding requests or orders from prospective clients to CTI for its consideration. Mr. Hewitt also has attended trade shows and appeared at business meetings on CTI's behalf in the United States. According to CTI, Hewitt is forbidden from signing contracts on behalf of CTI, and CTI retains ultimate authority over whether to contract with a prospective client referred to it by Hewitt. Hewitt is compensated in the form of both salary and commissions, and is solely responsible for paying taxes on the compensation that he receives from CTI. Hewitt operates out of his own home.

Intertek alleges that since September 2009, CTI has attended a number of trade shows in the United States. According to Intertek, in February 2010, CTI purchased a platinum

sponsorship (the highest sponsorship available) for the International Consumer Product Health & Safety Organization's 17th Annual Meeting and Training Symposium in Washington, D.C. During that same month, CTI attended the Toy Fair at the Jacob J. Javits Convention Center in New York, New York. Intertek alleges that CTI's booth was manned by Mr. Hewitt, Paul Nie (CTI's vice-president), Jody Yam (part of CTI's Sales and Marketing Department), and Julie Zhang (THD Marketing). CTI also attended two American Apparel & Footwear Association ("AAFA") shows in September 2009—one in Danvers, Massachusetts, and the other in Portland, Oregon. Mr. Hewitt and Jead Renaud, CTI's Product Director—Softline Products Division, attended on CTI's behalf.

CTI also is involved in a few American-based organizations. Four CTI employees—Mr. Hewitt, Chongchong Ding, Cathy Wang, and Jason Yang—are members of the AAFA's Product Safety Council and its Environmental Committee. Noted next to each of the committee members' respective names is that member's affiliated organization. Each of the four committee members listed above have "CTI Center Testing International Corp" next to their names. CTI also is listed in the Toy Industry Association's Resource Directory for Testing Laboratories. Additionally, one of CTI's informational brochures states that "CTI implements testing under the requirements of [the] following standards, in order that their services help manufacturers meet the need of lead and phthalate content bans of different countries and territories." Specifically, CTI states that it can provide testing services for the United States.

According to CTI, and not refuted by Intertek, over the last five years CTI has not provided services to any client based in Illinois and has provided testing and analytical services to only one client with substantive ties to Illinois. Since 2008, CTI has performed testing services for the Chinese offices of an American manufacturer with headquarters that are located

in the United States, but outside of Illinois. The services performed by CTI on behalf of this client include chemical, physical, and functionality testing of the American manufacturer's products with respect to relevant regulations and standards. According to CTI, the value of the services provided by CTI to this client in 2009 represents 0.55% of CTI's worldwide gross revenues in that year.

After CTI began providing testing services to the American manufacturer, the American manufacturer was acquired by another American company that is headquartered in Illinois. Prior to December 2009, payments provided to CTI for these testing services were issued by the American manufacturer's Chinese offices. However, since December 2009, payments have been issued by the Illinois-based parent company's Hong Kong office. Each of the products tested by CTI is manufactured by the American manufacturer, not the Illinois-based parent company.

According to the complaint, in late 2009, Intertek discovered that CTI was publishing and marketing materials regarding product safety training and testing analysis, including a design hazard analysis testing form and a Safety Certification Program Guide. Intertek claims that CTI was infringing its copyright in the Design Hazard Analysis Testing Form when Intertek received a copy of the form at a trade show in China. According to the complaint, the Design Hazard Analysis distributed by CTI was identical to Intertek's copyrighted work. Then, an Intertek employee located in the United States discovered CTI's Safety Certification Program Guide on CTI's website. According to the complaint, Intertek never authorized CTI to reproduce or distribute any of the Intertek Materials.

In March 2010, Intertek filed a complaint and motion for preliminary injunction in the United States District Court for the District of Connecticut. See D. Conn. Civ. A. No. 3:10-CV-00291-AVC ("Connecticut lawsuit"). The Connecticut Complaint asserted that CTI has been

publishing and marketing a Design Hazard Analysis Testing Form and a Safety Certification Program Guide, which are allegedly protected by copyrights registered in the United States Copyright Office. The Connecticut Complaint further alleged that the Safety Certification Program Guide was posted by CTI on its Internet sites, and that the Design Hazard Analysis Testing Form was obtained by Intertek at a trade show in China.

According to CTI, the Safety Certification Program Guide was previously posted on its Internet sites by its marketing team in China. Once CTI learned that Intertek filed the Connecticut lawsuit, CTI removed the Safety Certification Program Guide from its Internet sites. CTI submits that the Design Hazard Analysis Testing Form has never been distributed in the United States by CTI. Additionally, CTI maintains (and Intertek does not dispute) that the work performed by CTI on behalf of the lone client with any ties to Illinois is entirely unrelated to either the Design Hazard Analysis Testing Form or the Safety Certification Program Guide, which stand as the basis of Plaintiff's copyright infringement allegations.

## II. Analysis

### A. Motion to Dismiss

When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a *prima facie* case of jurisdiction. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). When a court decides a motion on the basis of paper submissions, a court accepts as true the plaintiff's undisputed allegations, and disputes in the evidence are resolved in favor of jurisdiction. See, *e.g.*, *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). However, the Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence

supporting the exercise of jurisdiction." *Id*. at 783. The Court takes as true those facts contained in a defendant's affidavits that remain unrefuted by the plaintiff. *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F. Supp. 2d 818, 821 (N.D. Ill. 1999).

In federal question cases, personal jurisdiction analysis has both a constitutional and statutory element. The Court must determine that (1) haling the defendant into court accords with the Due Process Clause of the Fifth Amendment; and (2) the defendant is amenable to service of process from the court. *Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316, 1318 (N.D. Ill. 1996) (citing *United States v. De Ortiz*, 910 F.2d 376, 381-382 (7th Cir. 1990); *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)). Due process in federal question cases requires that each party have sufficient contacts with the United States as a whole rather than any particular state. See *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001).

If the defendant is exposed to the jurisdiction of the United States, the question becomes whether the federal court has been authorized to exert the full power of the nation. *ISI Int'l, Inc*, 256 F.3d at 552. To answer this question, the court looks to the applicable federal statute – in this case, the Copyright Act. See *Omni Capital Int'l*, 484 U.S. at 104. The Copyright Act does not provide for nationwide service of process. See *Janmark v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997). When the federal statute at issue does not provide for nationwide service, the statutory basis for jurisdiction generally is provided by Rule 4(k)(1)(A), which ties jurisdiction to the forum state's long-arm statute. *Id.*; see also *Digisound-WIE, Inc. v. Bestar Techs., Inc*., 2008 WL 2096505, at *2 (N.D. Ill. May 16, 2008).

Under Illinois law, a court may exercise personal jurisdiction over a non-resident through operation of its long-arm statute. See 735 ILCS § 5/2-209. That statute extends personal

6

jurisdiction over claims that arise out of a number of enumerated actions and activities, including transacting any business or committing a tort in Illinois. See 735 ILCS § 5/2-209(a)(1-2). In addition, personal jurisdiction is proper over any corporation "doing business" within Illinois. 735 ILCS § 5/2-209(b). Finally, the long-arm statute's "catch-all" provision authorizes courts to exercise jurisdiction on any basis permitted by the Illinois or federal Constitutions. 735 ILCS § 5/2-209(c). Because the Illinois long-arm statute authorizes personal jurisdiction to the fullest constitutional limits, the three inquiries above "collapse into two constitutional inquiries — one state and one federal." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Moreover, the Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003).[1]

The federal test for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful

---

[1] In *Hyatt*, the court discussed a cautionary pronouncement in a 1990 Illinois Supreme Court decision suggesting that the state and federal standards may not be co-extensive. See *id*. (citing *Rollins v. Elwood*, 565 N.E.2d 1302 (Ill. 1990) (acknowledging *Rollins*, but noting that even if hypothetically the Illinois state and federal due process standards might diverge, no basis for such a divergence existed in the case before it). In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice. *Id*.; see also *Illinois v. Hemi Group LLC*, 2010 WL 3547647, at *2 (7th Cir. Sept. 14, 2010) (reiterating that the court was not aware of any "meaningful difference" between Illinois and federal due process requirements).

availment" requirement of the minimum contacts standard ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-416 (1984); see also *Hyatt Int'l*, 302 F.3d at 713. General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; *Hyatt Int'l*, 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. On the other hand, specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.*

Finally, even if a court finds that the minimum contacts standard and the specific jurisdiction requirement have been met, a court's due process inquiry does not end. The court also must consider whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the interstate judicial system's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These considerations are sometimes used to establish the reasonableness of jurisdiction in lieu of a strong showing of minimum contacts. *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Applying those standards, the Court notes first that neither Intertek's complaint nor its response brief alleges any contact between CTI and Illinois. Intertek asserts that CTI established an "office" in Connecticut (an assertion that CTI denies), purchased a sponsorship at a conference in D.C., attended a toy fair in New York, and visited apparel conventions in Massachusetts and Oregon; however, Plaintiff has not alleged *any* contact between CTI and Illinois, let alone "continuous and systematic contacts" with Illinois sufficient to justify general jurisdiction. See *Hyatt Int'l*, 302 F.3d at 713 (explaining that where a defendant's contacts with the forum state are more limited, the plaintiff's only option is to establish specific jurisdiction). Instead, the record demonstrates that CTI is a Chinese corporation that does not own or rent any property, maintain any facilities, or employ any workers (aside from hiring an independent contractor) in the United States, let alone Illinois. Rather, the only connection between Illinois and CTI, which is found in CTI's submissions to the Court, consists of CTI's performance of testing services in China on behalf of the Chinese office of an American manufacturer that is not based in Illinois but has a parent based there.[2] Clearly Illinois does not have general jurisdiction over CTI. If jurisdiction is to be found, it will be on the basis of specific jurisdiction, such that the harm to Intertek must have arisen out of CTI's contacts with Illinois.

Intertek argues that under the "effects doctrine," CTI has committed a tortious act in Illinois because the Infringing Materials were available via the internet in Illinois and the harm

---

[2] CTI submits that the value of those services constitutes approximately .55% of CTI's annual revenues.

9

caused by CTI's "willfully infringing activities" was felt in Illinois. See Pl. Resp. at 8. The effects test was established in *Calder v. Jones*, 465 U.S. 783, 789 (1984), which held that the state in which the victim of defamation lived had jurisdiction over the victim's defamation suit. The defendants in *Calder*, both residents of Florida, were involved in writing an allegedly libelous article for the *National Enquirer* about the plaintiff, a resident of California. *Id*. at 784-786. The Court characterized defendants actions as "intentional, and allegedly tortious, actions [which] were expressly aimed at California" and were not "mere untargeted negligence." *Id*. at 789. The defendants knew the article would have an adverse impact upon the plaintiff, the brunt of which would be felt largely in California. *Id*. at 789-790. The Seventh Circuit has applied similar reasoning and extended the effects test to the trademark context. See *Indianapolis Colts v. Metro. Baltimore Football Club, L.P.*, 34 F.3d 410 (7th Cir. 1994). *Indianapolis Colts* involved a trademark dispute between the Colts of the National Football League, and the recently created Baltimore CFL Colts. *Id*. at 411. The only activity of the Baltimore team undertaken or planned in Indiana at that point was the broadcast of its games, which would be shown nationwide. *Id*. Nonetheless, the Court concluded that the Indianapolis Colts' trademarks would be impacted in Indiana and therefore jurisdiction was proper under *Calder*. *Id*. at 411-412.

Intertek relies on the general proposition resulting from this line of cases that where the injury to intellectual property is incurred, jurisdiction is proper. See *Bunn-O-Matic Corp. v. Bunn Coffee Service Inc.*, 46 U.S.P.Q. 2d 1375 (C.D. Ill. 1998); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000). However, the effects test is not as simple as Intertek suggests—harm to the plaintiff in the forum is not enough to establish jurisdiction. The effects test allows a court to exert personal jurisdiction over a defendant only if it: (i) commits intentionally tortious actions; (ii) which are expressly aimed at the forum state;

10

(iii) which cause harm to the plaintiff in the forum state which the defendant knows is likely to be suffered. See *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 835 (citing *Calder*, 465 U.S. 783). The further requirements of knowledge of and intent to harm plaintiff in the forum were satisfied in all of the cases relied on by Intertek. The defendants in *Calder* knew that the plaintiff resided in California before they wrote the article. There also was no question in *Euromarket Designs* that the defendants were aware of the plaintiff's trademark and the court concluded that plaintiff had intentionally directed its actions toward Illinois and the plaintiff in that state and therefore knew that the plaintiff would suffer harm in Illinois. *Euromarket Designs*, 96 F. Supp. 2d at 836; see also *Indianapolis Colts*, 34 F.3d at 411 (despite defendant's knowledge of similarly named plaintiff and its mark, games involving the infringing trademark were broadcast into the plaintiff's forum state and thus defendant knew that its actions would result in harm in the plaintiff's state).

Intertek contends that CTI's website, most of which is in Chinese, establishes a sufficient relationship with this forum.[3] Citing to an unpublished decision from 1999, Intertek contends

---

3 Illinois courts typically consider three categories of interaction to determine whether personal jurisdiction has been established by a defendant's use of the Internet. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 837 (N.D. Ill. 2000). The first category includes situations in which a defendant clearly does business over the Internet, such as by entering into contracts with residents of foreign jurisdictions over the Internet. Websites in this category are "interactive" and allow for a transaction to take place between the user and the website owner. *Euromarket*, 96 F. Supp. 2d at 837. In such situations, jurisdiction over a defendant may be proper. The second category includes interactive websites that enable a user to exchange information with a host computer; whether personal jurisdiction over the defendant is proper in such situations is determined by examining the level of interactivity and nature of the exchange of information that occurs on the website. *Drake*, 2010 U.S. Dist. LEXIS 46195, at *14 (quoting *Zippo*, 952 F. Supp. at 1124). The third and final category consists of situations in which a defendant has "simply posted information on an Internet website which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Id.* at *14-15 (quoting *Zippo*, 952 F. Supp. at 1124). The Internet site identified by Intertek is a display of information and links, consisting mostly of Chinese characters and telephone numbers; the website does not permit online transactions (*i.e.*, the first category) or enable a user to exchange information with the site owner (*i.e.*, the second category). See *id.* Because CTI's site does nothing more than "make information available to those who are

that by making the Infringing Materials available on the internet, CTI knew that it would harm Intertek in Illinois. See, *e.g.*, *McMaster-Carr Supply Co. v. Supply Depot, Inc.*, 1999 WL 417352, at *3-6 (N.D. Ill. June 16, 1999). But Intertek fails to address more recent, reported decisions in which Courts explicitly have rejected this position. Most notably, in *Jennings v. AC Hydraulic A/S*, the Seventh Circuit stated:

> We need not decide in this case what level of "interactivity" is sufficient to establish personal jurisdiction based on the operation of an interactive website. Rather, it is enough to say that this logic certainly does not extend to the operation of a "passive" website, such as the one that AC Hydraulic maintains, which merely makes available information about the company and its products. The exercise of personal jurisdiction based on the maintenance of a passive website is impermissible because the defendant is not directing its business activities toward consumers in the forum state in particular. *Cf. Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (explaining that personal jurisdiction may be established without showing physical presence of defendant in forum state as long as its business activities are "purposefully directed" toward consumers in that state). With the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website. Premising personal jurisdiction on the maintenance of a website, without requiring some level of "interactivity" between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country. This scheme would go against the grain of the Supreme Court's jurisprudence which has stressed that, although technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants.

383 F.3d 546, 549-50 (7th Cir. 2004) (some internal citations omitted).

Also on point is *Richter v. INSTAR Ent's Int'l, Inc.*, 594 F. Supp. 2d 1000 (N.D. Ill. 2009), in which the defendant, a New Jersey corporation, was accused of selling plaintiff's copyrighted works, but did not have any workers, agents, or place of business Illinois and obtained less than one percent of its business there. *Id.* at 1004-05. The only source of contact between the defendant and prospective customers in Illinois was its interactive Internet site. *Id.*

---

interested in it," the website is appropriately classified as "passive," a conclusion that Intertek does not contest.

at 1006-07. After the plaintiff located several of its copyrighted works for sale by the defendant at an art show in the United States and on the defendant's interactive Internet site, the plaintiff contacted the defendant, who immediately removed the postings from its site and stopped selling plaintiff's works. *Id.* at 1005. The plaintiff sued for copyright infringement, arguing that the "effects doctrine" permitted the Illinois court to exercise jurisdiction over the defendant. *Id.* at 1010. The district court granted the defendant's motion to dismiss, noting that the "common thread" in cases where the "effects doctrine" had been exercised was "the intentional infliction of harm to a plaintiff in the forum state." *Id.* at 10. The court found that because "[c]opyright infringement does not require any particular state of mind," when defendant displayed and sold plaintiff's works, defendant "did not know that any tortious acts were occurring, much less direct such acts toward Illinois." *Id.* at 1011 (citing *Calder*, 465 U.S. at 789). The court added that "the allegation of infringement should not by itself force the offending party to defend a suit anywhere a plaintiff might reside," and "although plaintiff arguably suffered a financial loss in Illinois from defendant selling [plaintiff's works] elsewhere in the country," the "effects doctrine" did not support the exercise of jurisdiction in Illinois. *Id.* at 1012. Citing the Seventh Circuit's decision in *Jennings*, the *Richter* court concluded that offering the plaintiff's work for sale on the Internet, without more, did not demonstrate that the defendant purposefully directed its activities toward customers in Illinois, as required by *Jennings*. Instead, the court found that Defendant's contacts with Illinois in regard to plaintiff's works were only "potential contacts" and that the plaintiff had failed to offer facts to show that anyone in Illinois used the interactive aspects of the defendant's website to purchase the plaintiff's works or that the defendant had shipped the works into Illinois. See *Richter*, 594 F. Supp. 2d at 1013-14.[4]

---

[4] Several other Northern District of Illinois cases align with *Richter*. See, *e.g., Gehrls v. Gooch*, 2010 U.S. Dist. LEXIS 44734 (N.D. Ill. May 7, 2010) (where non-resident defendant's conduct occurred in

Unlike the interactive website at issue in *Richter*, CTI's website is passive and primarily in the Chinese language, and CTI has never offered Intertek's works for sale or otherwise placed them in the stream of commerce. Like the defendant in *Richter*, CTI's only possible contact with Illinois regarding the copyrighted subject matter occurred through its Internet site, and CTI obtained less than one percent of its business (business unrelated to this lawsuit) from Illinois. Finally, like the plaintiff in *Richter*, Intertek has not offered any allegation or evidence that any person downloaded or copied Intertek's Safety Certification Program guide from CTI's websites. Accordingly, there is no basis for the Northern District of Illinois to exercise jurisdiction over CTI.

In the interest of completeness, the Court further observes that if Intertek had demonstrated that the requisite "minimum contacts" exist between CTI and Illinois, the Court would have been required to continue to the "reasonableness" stage of the inquiry and analyze the factors set forth in *Asahi Metal Industry Co., Ltd. v. Superior Court of California* to assess whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1362 (7th Cir. 1996) (quoting *Asahi*, 480 U.S. 102, 113 (1987)). A review and analysis of the five *Asahi* factors—(1) the burden on the defendant; (2) the interests of the forum state; (3) the

---

foreign country and did not reference or target Illinois, personal jurisdiction over non-resident defendant improper); *uBID, Inc. v. GoDaddy Group, Inc.*, 673 F. Supp. 2d 621, 629 (N.D. Ill. 2009) (where defendant's website automatically provided services to Illinois customers but was not aimed at Illinois, "effects doctrine" did not provide basis for personal jurisdiction); *Guinness World Records Ltd. v. Doe*, 664 F. Supp. 2d 927, 929 (N.D. Ill. 2009) (where defendant's sales in state represented small percentage of total sales and small volume of overall sales, contact with forum state not substantial, citing *Richter* and "host of cases to the identical effect"); *Primack v. Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884, 890-91 (N.D. Ill. 2009) (where non-resident defendant attended one Chicago seminar but made no sales there and was unaware of plaintiff's mark, defendant did not target Illinois and personal jurisdiction over defendant was improper); *Occidental Hoteles Management, S.L. v. Hargrave Arts, LLC*, 2009 U.S. Dist. LEXIS 67391 (N.D. Ill. July 24, 2009) (where defendant maintained interactive commercial websites that permitted sales throughout United States but there was no record of sales to Illinois, jurisdiction was improper even though defendant targeted plaintiff with Internet sites, but not Illinois).

plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficiently resolving the controversy; and (5) the shared interest of the states in furthering substantive social policies—indicates that the exercise of jurisdiction over CTI by Illinois courts would be improper in any event under the facts and circumstances of this case.

Of the five *Asahi* factors, courts have recognized that the "burden on the defendant forced to litigate in a foreign forum is still the primary concern." *Santora v. Starwood Hotels & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 700-01 (N.D. Ill. 2008) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 292 (1980)). Indeed, the Supreme Court has cautioned that "[t]he unique burdens placed on one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders * * * * Great care must be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 114-15 (emphasis added). The exercise of jurisdiction over CTI by an Illinois court would impose a significant burden on CTI, as its Shenzhen headquarters is located nearly 8,000 miles from Chicago. CTI has no employees or facilities in Illinois, and none of its records, files or witnesses or information regarding the infringement—*i.e.*, the alleged distribution of the Design Hazard Analysis Testing Form at a trade show in China or the posting of the Safety Certification Program Guide on its Internet sites by its marketing team in China—are located in Illinois. Moreover, the alleged acts serving as the basis for the complaint occurred in China, and because the allegedly infringing conduct either never occurred in the United States or is no longer occurring, there is no potential for Illinois residents to be harmed.

Additionally, it is difficult to understand how Intertek's interests in proceeding in a convenient forum would be furthered by forcing CTI to defend against a lawsuit in Illinois.

While an Illinois court may have an interest in adjudicating disputes involving the alleged infringement of an Illinois company's copyright, the Court would be hard-pressed to find Illinois as the most efficient form for judicial resolution of Intertek's allegations. Because the conduct occurred in China, Intertek is free to assert its claims against it there. Indeed, with 88 offices in seventeen Chinese cities, Intertek has a presence in China that dwarfs CTI's presence in Illinois. The only fact alleged in the complaint that tends to suggest that jurisdiction is proper in Illinois is that Intertek's primary testing facility for consumer goods is located in Arlington Heights. However, it is the activity of the defendant, and not the status of the plaintiff, that determines whether jurisdiction is proper in a particular district. See *Wiles v. Mortia Iron Works Co., Ltd.*, 530 N.E.2d 1382, 1385-86 (Ill. 1988) (citing *Burger King*, 471 U.S. at 475 ("[j]urisdiction will only be proper where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State")). As set forth above, CTI has provided services to just one client with any ties to Illinois in the last five years, and the services that it provided to that client were performed in China, represent just a fraction of a percent of CTI's gross revenues, and are unrelated to the wrongdoing alleged by Intertek—that is, the distribution of either the Design Hazard Analysis Testing Form or the Safety Certification Program Guide. Finally, given that the allegedly infringing acts occurred in China, it is extremely unlikely that any witnesses or evidence pertaining to the alleged infringement would be located in Illinois. *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994) (where defendant, witnesses and documentary evidence were located far outside district, court lacked personal jurisdiction over defendant).

The mere allegation that a defendant has committed an intentional tort against the plaintiff is not enough to hale the defendant into court in the plaintiff's home state when the

defendant has almost no contacts with that state. See *Wallace v. Herron*, 778 F.2d 391, 394 (7th. Cir. 1985). At the end of the day, the burden on CTI to litigate in Illinois seems disproportional to the amount of harm alleged for trademark infringement, especially given that Intertek has failed to identify even one person who downloaded or copied the allegedly Infringing Materials. While Illinois may have an interest in adjudicating disputes involving alleged trademark infringement of Illinois companies, the Court cannot find that Illinois has a strong interest in adjudicating this dispute.

In sum, the Court concludes that CTI does not have sufficient minimum contacts with Illinois and as such, has not purposely availed itself of the benefits and protections of the laws of Illinois by directing its business activities at residents within the state. Accordingly, Intertek has failed to establish that personal jurisdiction over CTI exists, and its lawsuit against CTI must be dismissed.

### B. Motion for Costs

CTI submits that it is entitled to recover the attorney's fees and costs that it incurred in defending itself against the Connecticut lawsuit. As CTI points out, when a plaintiff who previously dismisses an action in any Court files an action based on or including the same claim against the same defendant, the court may order the plaintiff to pay all or part of the costs of the previous action. See Fed. R. Civ. P. 41(d)(1).

While the Court has discretionary authority to award fees and costs to CTI (see *Esposito v. Piatrowski*, 223 F.3d 497, 500-01 (7th Cir. 2000)), the facts and circumstances do not warrant the exercise of that authority in this instance. The purpose of the rule is to prevent forum shopping and vexatious litigation. See *Esposito*, 223 F.3d at 501. It is not clear to the Court that Intertek was engaged in forum shopping; rather, Interek was pursuing two recognized theories in

support of personal jurisdiction in the two jurisdictions that conceivably could have heard this action. And while both of Intertek's efforts fell short, the Court cannot find that Intertek filed either action in bad faith, vexatiously, or for oppressive reasons. See also *Metro. Life Ins. Co. v. Guardian Life Ins. Co. of America*, 2007 WL 1169704, at *4 (N.D. Ill. Apr. 17, 2007). As pointed out on more than one occasion by CTI, when Intertek notified CTI of the offending materials, it immediately removed them from the website. Perhaps the materials were removed out of caution or perhaps they were removed because they truly were offending; in any event, the Court finds that dismissal of this case, without an award of fees and costs, leaves this case in the right posture.

### III. Conclusion

Intertek has failed to establish that this Court has personal jurisdiction over CTI. Therefore, the Court grants CTI's motion to dismiss [8]. The Court denies CTI's motion for costs [11].

Dated: February 1, 2011

                                        Robert M. Dow, Jr.
                                        United States District Judge